22935

NATIONAL TIME SHARE SALES, INC., Respondent v. MARITIME LIM-
ITED PARTNERSHIP, a South Carolina Limited Partnership, by and
through FALSTAFF-MARITIME, INC., General Partner, d/b/a Mar-
itime Beach and Racquet Club, Appellants.

(374 S. E. (2d) 678)

Supreme Court

*George Hunter McMaster, John Gregg McMaster,* and
*Brian Dumas,* Columbia, *for appellants.*

*John R. Clarke,* North Myrtle Beach, *for respondent.*

Heard Oct. 18, 1988.

Decided Dec. 12, 1988.

*Per Curiam:*

This case involves a claim by National Time Share Sales, Inc. against Maritime Limited Partnership for alleged unpaid commissions due for the years 1982, 1983 and 1985 for the sale of timeshare units. National Time Share Sales (NTSS) was awarded $861,865.34. On appeal, Maritime Limited Partnership (Maritime) argues that (1) the judgment is not supported by the preponderance of the evidence; (2) NTSS is not entitled to a judgment for damages in excess of the amount for which it prayed; (3) and NTSS is not the proper party in interest to maintain a lawsuit on behalf of S & S Marketing, Inc. for commissions accruing prior to April 1, 1983.

In September 1982, Maritime and S & S Marketing, Inc., a Missouri corporation operated by Murl Spradlin, entered into an oral agreement whereby S & S Marketing was to market timeshare units for the Maritime Beach and Racquet Club, a timeshare condominium development owned by appellant Maritime. S & S Marketing was to receive a commission on all sales that were capable of being "funded." "Funded sales" would not include rescissions, when the purchaser rescinded the contract or bad credit sales, where the purchaser's check was bad or the purchaser could not obtain the necessary financing. In addition, "upgrades" would not be eligible for a commission on the full amount. For example, if a purchaser increased his timeshare unit from one week for $10,000 to two weeks for $18,000, S & S Marketing would receive a commission on the amount of the increase, $8,000—not the total $18,000. The commission rate was set at fifty-two (52%) percent on all sales up to $780,000 each month and twenty-five (25%) percent on sales in excess of $780,000. According to Spradlin's testimony, S & S Marketing merged into or assigned its assets in 1983 to respondent NTSS, a South Carolina corporation, which was also owned and operated by Mr. Spradlin.

On April 1, 1983, a written agreement was entered into between Maritime and NTSS whereby effective April 1, 1983, NTSS was to receive a commission of thirty-eight

(38%) percent on all sales that were capable of being funded. In April of 1985, the commission rate was increased by agreement to forty (40%) percent. The contractual relationship continued in effect until June 30, 1985.

NTSS instituted a lawsuit against Maritime to collect alleged unpaid commissions for the years 1982, 1983 and January through June of 1985. Since the action was an equitable action for an accounting, it was referred to a Master in Equity who rendered the judgment in favor of NTSS.

## A. SUFFICIENCY OF THE EVIDENCE

Maritime argues that the award of $861,865.34 is not supported by a preponderance of the evidence. We agree. The Master's findings of fact, calculations and ultimate award were based solely on the direct testimony of Mr. Spradlin. The Master's total reliance upon Spradlin's direct testimony was deficient for several reasons.

During the trial, Mr. Spradlin gave direct testimony regarding the amounts of the alleged commissions. He based most of his calculations on a document entitled the Master Sales Summary, which was prepared by Maritime's bank for loan purposes. The evidence showed that this document contained the total sales made including upgrades, rescissions and bad credit sales. Although the parties disagreed as to the amount and extent of commissions due, both sides agreed that "funded sales" were the basis for calculating the commissions. Because all sales were included in the Master Sales Summary, any calculations based on this document would result in overstated commissions since sales would be included for which a commission would not be due.

In addition, it does not appear that Spradlin's testimony on cross-examination was considered in calculating the award. During cross-examination, Spradlin admitted that many checks paid to S & S Marketing and NTSS had not been credited as payments made by Maritime and the amounts of these checks should be deducted from the amount of commissions due. Many of these amounts, however, were not deducted from the amount claimed and eventually awarded.

Similarly, the testimony concerning the amount due for

1983 was not given full consideration. The record reflects that Spradlin received a letter from Maritime in 1984 which stated that as of December 31, 1983, Maritime owed NTSS $85,020.45. On behalf of NTSS, Spradlin signed the letter with the notation "approximately correct" and returned it to Maritime. The evidence also showed that at the end of 1983, the bookkeeper for NTSS noted in the ledger book that there was an unpaid commission balance of $80,886.50. The Master, however, found that Maritime owed NTSS $544,015.50 for 1983. This is the amount that Spradlin claimed was due during his direct testimony. Even though no other evidence was submitted to substantiate this claim, the Master upheld this amount and in doing so failed to explain why the testimony about the $85,000 was not considered. Therefore, we remand this issue to be reconsidered.

## B. DAMAGES

Maritime also argues that NTSS is not entitled to a judgment for damages in excess of the amount prayed for in its Amended Complaint or listed in its Answers to Interrogatories. We disagree.

In its Amended Complaint, NTSS claimed damages in the amount of $469,845.85 and attached a Statement of Account itemizing unpaid commissions in the amount of $396,614.10. In its Answers to Interrogatories, NTSS claimed commissions only for the month of June in 1985.

At trial, NTSS introduced evidence of unearned commissions in excess of either of the amounts listed in its Amended Complaint or Answers to Interrogatories and introduced evidence of unpaid commissions for additional months in 1985.

Recently adopted Rule 15(b) of the South Carolina Rules of Civil Procedure provides in pertinent part:

> "If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action shall be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court shall upon

motion grant a continuance reasonably necessary to enable the objecting party to meet such evidence."

This rule follows the language of Rule 15 of the Federal Rules of Civil Procedure which has been interpreted to allow the amendment of the pleadings to conform to the proof where the opposing party is not prejudiced. *Campana v. Eller*, 755 F. (2d) 212 (1st Cir. 1985). The same conclusion was reached in *Soil and Material Engineers, Inc. v. Folly Associates*, 293 S. C. 498, 361 S. E. (2d) 779 (App. 1987), where the Court of Appeals held that pleadings may be amended late in the trial unless there is prejudice to the opposing party.

In the case at bar, it is clear that the Master did not abuse his discretion in allowing NTSS to introduce evidence of damages in excess of the amounts claimed in its Amended Complaint and Answers to Interrogatories. The record reflects that the Master considered the testimony of NTSS explaining that the reason for the increase in the amount of damages was the revelation of information by Maritime immediately before trial. In addition, the Master noted that the only prejudice to Maritime was the lack of time to prepare for the defense of this evidence. In response to this finding, the court granted Maritime additional time to prepare for the defense of the increased amounts. We conclude that the grant of additional time cured any prejudice against Maritime.

### C. PARTIES

Maritime also claims that NTSS was not the proper party in interest to maintain a lawsuit on behalf of S & S Marketing, Inc., for commissions received prior to April 1, 1983. We disagree.

Although no written evidence concerning the merger of S & S Marketing, Inc. and NTSS was introduced during the trial, Maritime conceded at oral argument that it contracted and dealt with S & S Marketing , Inc. and NTSS, by and through Murl Spradlin. Maritime is therefore estopped from asserting that S & S Marketing, Inc. is not the predecessor in interest to NTSS.

For the foregoing reasons, the Master's Order is remanded on the sole issue of the amount of the judgment. On

remand, the Master is to consider testimony already received and may consider such additional testimony as may be requested by the Master *sua sponte* or offered by either of the parties.

Affirmed in part and remanded in part.